# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1421

_____

| | |
|---|---|
| United States of America,<br><br>          Appellee,<br><br>    v.<br><br>Troy Butler,<br><br>          Appellant. | Appeal from the United States<br>District Court for the<br>Eastern District of Missouri.<br><br>[UNPUBLISHED] |

_____

Submitted:  June 11, 2002

Filed:  June 17, 2002

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

PER CURIAM.

After the district court[1] denied his motion to suppress, Troy Butler (Butler) entered conditional pleas of guilty to possessing cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  On appeal, Butler challenges the validity of the police search that was the subject of his motion to suppress.  We affirm.

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri, adopting the Report and Recommendation of the Honorable David D. Noce, United States Magistrate Judge.

## I.   BACKGROUND

On June 1, 2001, a confidential informant told a police officer that Butler had drugs and weapons in his St. Louis apartment.  After conducting a preliminary investigation, the officer discovered the utility bills for the apartment were listed in the name of Loretta Meade.  That same day, the officer and a partner observed a woman leave Butler's apartment and drive away.  The officers followed the woman until she got out of her vehicle.  They then approached her and asked her name.  The woman identified herself as Loretta Meade (Meade).

After learning her name, the officers told Meade about their investigation and advised her of her <u>Miranda</u> rights.  Meade told the officers she shared the apartment with Butler and that there were drugs in it.  She also told the officers she wanted to cooperate and would consent to a search of the apartment.  The officers then handcuffed Meade and drove her to a secure location where she signed a written consent to search the apartment.  After Meade signed the consent form, the officers drove her to the apartment, where she gave them her key.  Meade remained cooperative and calm at all times while interacting with police officers.

During their search of the apartment, the officers found Butler asleep in a bedroom.  Butler told the officers he had controlled substances, money, and weapons, and he showed the officers where they were located.  After being placed under arrest and advised of his <u>Miranda</u> rights, Butler told the officers everything in the apartment belonged to him.

## II.   DISCUSSION

On appeal, Butler argues the search of his apartment was illegal because Meade did not validly consent to it.  Butler concedes the officers had probable cause to obtain a search warrant, but contends Meade's consent to the search was vitiated by an arrest without probable cause.  Whether Meade validly consented to the search is

a question of fact which we review for clear error.  See United States v. Alcantar, 271 F.3d 731, 737 (8th Cir. 2001).

Police officers may conduct a search without a warrant, even in the absence of probable cause, as long as someone with authority to consent to the search voluntarily grants permission.  United States v. Matlock, 415 U.S. 164, 169-71 (1974); Schneckloth v. Bustamonte, 412 U.S. 218, 219, 222 (1973).  Butler challenges only the validity of Meade's consent, not her authority to grant permission to search.  Whether Meade's consent was truly voluntary must be determined from the totality of the circumstances.  See Schneckloth, 412 U.S. at 227, 248-49; United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001) (listing relevant factors).

In this case, the district court did not commit any clear error in finding that Meade gave her consent voluntarily.  From all outward appearances, Meade willingly cooperated with the police.  Meade voluntarily spoke to the officers when they approached her.  She told them about the drugs in her apartment and where Butler was sleeping.  After being advised of her Miranda rights, and before she was patted down, handcuffed, and placed in the police car, Meade orally gave her consent to a search of the apartment.  Meade later signed a written consent form and willingly gave her apartment key to the officers.

These circumstances are not outweighed by circumstances suggesting undue police coercion or intimidation, or any deception.  They provide ample support for the district court's finding that Meade voluntarily consented to the search.

## III.  CONCLUSION
Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.